COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| | § | |
| IN RE: JOE E. SMALL and ENERPLUS | § | No. 08-08-00198-CV |
| RESOURCES (USA) CORPORATION, | | |
| f/k/a LYCO ENERGY CORPORATION, | § | AN ORIGINAL PROCEEDING |
| | § | |
| Realtors. | § | IN MANDAMUS |
| | § | |

**O P I N I O N**

Realtors, Mr. Joe Small and Enerplus Resources (USA) Corporation ("Enerplus"), have filed a petition for a writ of mandamus ordering the Hon. Angie Juarez Barill, Judge of the 346th Judicial District Court of El Paso County, to vacate an order compelling the production of numerous documents which Relators assert are privileged. We conditionally grant.

This mandamus proceeding arises from an oil and gas lease dispute. The oil and gas lease at the center of the underlying dispute covers property located in Richland County, Montana. The original lease was signed by Albert and Betty Vaira in 1962. Real party in interest, S.L.D.S. Energy, Inc. ("S.L.D.S."), is a successor in interest to the 1962 lease. In the summer of 2004, Lyco Energy, the predecessor to Relator Enerplus, contacted S.L.D.S. through its landman, Mr. Joe Small, seeking a release of S.L.D.S.'s interest in the 1962 lease. On August 4, 2004, Mr. Small spoke with Fred Nelan, the President of S.L.D.S. Energy. On August 11, 2004, Mr. Nelan signed a release of the interest.

S.L.D.S. filed suit on September 25, 2006. The first amended petition alleged that

Enerplus, through Mr. Small, fraudulently induced S.L.D.S. to release its interest in a 1962 lease. S.L.D.S. alleged that Mr. Small falsely represented to Mr. Nelan that its interest in the 1962 lease had lapsed for non-production and that the release was only neccessary for title "cleanup." Following S.L.D.S.'s release, Enerplus drilled a producing well on the Vaira property. S.L.D.S. sued to recover the royalties it would have been owed under the 1962 lease in addition to exemplary damages for the alleged fraud.

The parties began discovery. On April 18, 2007, Enerplus and Mr. Small filed a privilege log contesting S.L.D.S.'s right to discover numerous internal documents regarding the title work on the property based on attorney-client and attorney work product privileges. On January 25, 2008, Enerplus and Mr. Small amended their privilege log to include additional documents containing communications between Enerplus and Mr. Small, and Enerplus and its attorneys.

Pursuant to S.L.D.S.'s request, the trial court reviewed the documents "in camera." On February 6, 2008, the parties appeared before the trial court for a hearing on the asserted privileges. Two days later, the trial court entered an order compelling Enerplus and Mr. Small to produce the documents for the court's inspection. On May 16, 2008, the court entered a written order granting in part and denying in part the production of the privilege log documents. Enerplus's motion for reconsideration was denied on September 10, 2008.

The parties have condensed the documents, which the trial court ordered to be produced into five groups. Group "A" contains emails between Enerplus representatives and attorney, John Lee, concerning the curative steps required by a 2004 Division Title Order. Group "B" contains a single fax document sent in May 2006, from Kirby Dasinger, an Enerplus landman, to Enerplus Land Manager Greg Ryan. Group "C" consists of handwritten notes by Enerplus Vice

President Robert Moore regarding discussions he had with attorney Lee. Group "D" refers to a single document referred to as the "due diligence report," which was created by Enerplus attorneys for Enerplus employee review. Finally, group "E" contains several emails sent from attorney Lee to Enerplus representatives concerning royalties from the well.

Mandamus will lie only to correct a clear abuse of discretion. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004)(orig. proceeding). An Appellant court rarely interferes with a trial court's exercise of discretion. *In re Seigel*, 198 S.W.3d 21, 26 (Tex.App.--El Paso 2006, orig. proceeding). A clear abuse of discretion warranting correction by mandamus occurs when a court issues a decision which is without basis in or reference to guiding rules and principles of law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)(orig. proceeding). With respect to resolution of fact issues, or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992)(orig. proceeding). The relator must establish that the trial court could reasonably have reached only one conclusion. *Id*. at 840. With respect to the trial court's determination of the legal principles controlling its ruling, the standard is much less deferential. *In re Seigel*, 198 S.W.3d at 26. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Walker*, 827 S.W.2d at 840.

An appellate court will deny mandamus relief if another remedy, usually appeal, is available and adequate. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d at135-36. In considering whether an adequate remedy by appeal exists, appellate courts consider whether the benefits of relief by mandamus outweigh the detriments. *Id*. at 136. Although generally a party

may obtain discovery regarding any matter that is relevant to the subject matter of the pending litigation, privileged matters are not discoverable. *See* TEX.R.CIV.P. 192.3(a); *In re Seigel*, 198 S.W.3d at 27. If a trial court erroneously orders privileged matters to be disclosed, there is no adequate remedy at law, and mandamus is the proper remedy. *See Dillard Dept. Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995); *Walker*, 827 S.W.2d at 843.

Enerplus and Mr. Small asserted the attorney-client and attorney work product privileges in response to S.L.D.S.'s discovery requests. To establish a privilege, a party must plead the particular privilege, produce evidence to support the privilege through affidavits or testimony, and produce the documents themselves if the trial court determines an *in camera* review is necessary. *See* TEX.R.CIV.P. 193.3(a); *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex. 1985)(orig. proceeding). Once the party resisting discovery establishes a *prima facie* case that the documents are privileged, the burden shifts to the discovering party to refute the privilege claim. *See Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 591 (Tex.App.--Dallas 1994, orig. proceeding).

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of facilitating the rendition of legal services from disclosure. *See* TEX.R.EVID. 503(b); *Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex. 1996). This privilege attaches to the complete communication between attorney and client. *Marathon Oil Co.*, 893 S.W.2d at 589. The subject matter of the information communicated is irrelevant when determining whether the privilege applies. *Marathon Oil Co.*, 893 S.W.2d at 589. The privilege attaches to legal advice and factual information included in completed communications between attorney and client. *Id*.

The attorney-client privilege applies only to communications which are intended to be confidential between the attorney and the client and which are made for the purpose of facilitating the rendition of legal services for the client. *See* TEX.R.EVID. 503(b); *Arkla, Inc. v. Harris*, 846 S.W.2d 623, 629 (Tex.App.--Houston [14th Dist.] 1993, orig. proceeding). A communication is "confidential" if it is not intended to be disclosed to third persons other than those persons to whom disclosure is made "in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." TEX.R.EVID. 503(a)(5). If a matter for which a privilege has been asserted has been disclosed to a third party, the party asserting the privilege has the burden to prove that no waiver occurred. *Arkla, Inc.*, 846 S.W.2d at 630.

*Groups "A" & "C"*

Following attorney Lee's completion of the Division Title Order on the property in 2004, Enerplus employees and representatives began the process of satisfying the curative measures as outlined in the opinion in order to proceed with their plan to develop the mineral rights. During that process, Mr. Moore remained in contact with Mr. Lee. Enerplus asserted the attorney-client privilege to protect, what its privilege log describes as Mr. Moore's handwritten notes related to conversations with, or information provided by Mr. Lee from discovery. Enerplus also witheld five emails between Mr. Lee, Mr. Small, Mr. Moore, and Mr. Dasinger regarding the Larson well by asserting the attorney-client privilege. These emails are referred to by the parties as group "A."

The emails were sent between July 26 and August 24, 2004, during the same time period Mr. Small was corresponding with Mr. Nelan regarding the release. According to affidavit

-5-

evidence presented by Enerplus, all of these documents were made for the purpose of the rendition of legal services related to the title on the property at issue. All the affidavits include statements indicating that the parties to these emails expected the communications would be private and protected by the attorney-client privilege.

Enerplus argues that the affidavit evidence it has provided establishes the "confidential communication" requirement of Rule 503(a)(5), and therefore, satisfied its burden to show the documents are not discoverable. In response, S.L.D.S. does not challenge the communications' status as confidential but argues that they were not made during the time period when Mr. Lee was providing legal services. This argument is based on the following statement in Mr. Lee's affidavit: "I am one of the attorneys at Crowley who assisted Enerplus in doing the title work prior to the drilling of the wells in question, including the well identified as [Larson]." S.L.D.S. asserts that by this statement, Mr. Lee has excluded any work he did for Enerplus after July 5, 2004, the day drilling began, from his rendition of professional legal services for Enerplus. S.L.D.S. concludes that this statement creates a conflict in the evidence regarding the duration of Mr. Lee's services, which could only be resolved by the trial court. *See In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006).

We disagree that such a conflict exists. When read in the context of the totality of the record, Mr. Lee's statement only indicates that part of the legal service he provided to Enerplus included "title work" prior to the date drilling began on the well. The totality of the record, including the remainder of Mr. Lee's affidavit, shows that Mr. Lee continued to provide Enerplus with legal services long after drilling began. S.L.D.S. has failed to rebut Enerplus's assertion of attorney-client privilege with regard to the documents in group "A." Therefore, the trial court

abused its discretion by ordering Enerplus to produce these documents on this ground.

S.L.D.S. argues in the alternative, that Enerplus waived the attorney-client privilege with regard to these emails by including landman Kirby Dasinger, a third party, in the communications. It was part of Enerplus's burden to establish that the privilege had not been waived by disclosure. *See Arkla, Inc.*, 846 S.W.2d at 630. According to his affidavit, Mr. Dasinger was retained by Lyco Energy to assist Mr. Small and Mr. Lee regarding the curative measures being taken on the property title. Mr. Dasinger understood that his communications with Mr. Small and Mr. Lee regarding the title work was confidential. The record does not contain evidence indicating that the emails were communicated to any additional parties. Based on Mr. Dasinger's affidavit, Enerplus rebutted S.L.D.S.'s disclosure argument by establishing that the emails were not disclosed to any party other than those individuals involved in the furtherance of Mr. Lee's representation of Enerplus. Therefore, there was no waiver by disclosure, and the trial court abused its discretion by ordering the emails to be disclosed on this ground.

S.L.D.S. presents similar arguments in response to Enerplus's attorney-client privilege assertion to group "C." Group "C" consists of several handwritten notes by Enerplus Vice President Robert Moore, regarding his discussions with Mr. Lee. Again, S.L.D.S. does not argue that these notes do not fit the definition of attorney-client privilege but simply argues the documents are not privileged because they were created after Mr. Lee ceased providing legal services to Enerplus. Again, because we disagree that the record contains an evidentiary conflict regarding the duration of Mr. Lee's representation, the trial court abused its discretion by ordering these notes be disclosed.

*Group "E"*

Group "E" consists of three emails sent in October of 2004 regarding potential royalty interests. The first email was sent from Joe Small to Kirby Dasinger, David Knapp, and John Lee on October 5, 2004, with carbon copies sent to Patricia Scott and Robert Moore. The second email was sent by John Lee back to Joe Small on October 6, 2004. Joe Small sent the final email on October 6, 2004, also to John Lee with copies also sent to Ms. Scott and Mr. Moore. Mr. Small explained in his affidavit that the emails were communication related to the ongoing title work being done under Mr. Lee's direction. Enerplus asserted these documents were also protected by the attorney-client privilege.

S.L.D.S. argues that any claim Enerplus may have had that the emails one and three were privileged was waived by their disclosure to third parties via the carbon copies to Mr. Dasinger, Mr. Moore, and Ms. Scott. S.L.D.S. argues further that any privilege with regard to email two was waived by Mr. Small's admission in his deposition that he reviewed the document while preparing to testify.

As we discussed in our analysis of group "A," a communication is "confidential" if it is not intended to be disclosed to third persons other than those persons to whom disclosure is made "in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmition of the communication." TEX.R.EVID. 503(a)(5). As was the case earlier, the record does not indicate that Enerplus disclosed the emails in group "E" to third parties. The record reflects, and S.L.D.S. does not argue to the contrary, that Mr. Moore was an Enerplus executive, Ms. Scott was in a high level position at Lyco, and Mr. Dasinger was a Lyco representative in his capacity as a professional landman at the time they were included in

Mr. Small's email communications with Mr. Lee. Based in their professional roles on behalf of Enerplus and Lyco, the evidence does not demonstrate that Mr. Moore, Ms. Scott, and Mr. Dasinger were parties outside the organization, which was the "client" for whom Mr. Lee was performing legal services. Therefore, there was no waiver of the attorney-client privilege by disclosure for emails one and three of group "E."

With regard to email two, S.L.D.S. argues the privilege was waived by Mr. Small's use of the document in his preparation for deposition. During his deposition, Mr. Small testified as follows:

Q:      Any other documents that you used in preparing for your deposition today?

A:      No, not really.

.          .          .

A:      I'm sorry. I did look at things like this (indicating).

Q:      The letters?

A:      The letters and the copies of the releases, and things like that.

Q:      Anything else that you recall?

A:      Possibly an internal memorandum about the title opinion.

Q:      Okay. And this internal memorandum that you reviewed in preparation for your deposition today, who issued the internal memorandum.

A:      I probably initiated it.

Q:      Okay. And is it something that you used to recall the sequence of events as far as this case was concerned?

A:      Oh, it was written way before this case.

Q:      Oh, it was?

A:     Yes.

Q:     What kind of internal memorandum are we talking about?

A:     Communication with John Lee.

Q:     Okay.  But this internal memorandum that you reviewed this -- regarding your communications with John Lee, that was something that you used in preparation for your deposition today; is that right?

A:     I reviewed it.

Enerplus argues that Mr. Small's reference to an "internal memorandum" was not an admission that the emails were reviewed prior to his deposition.  Enerplus states that the document Mr. Small was referring to, an internal memorandum created by Mr. Small for Mr. Lee and other Enerplus representatives in May 2004, has been produced pursuant to a Rule 11 agreement, and therefore, the issue is moot.  The document Enerplus refers to is contained in the mandamus record.  It is titled  "MEMORANDUM," written by Mr. Small on May 12, 2004.  In the memo, Mr. Small reports the status of his work in satisfying the requirements of the Division Title Order.

S.L.D.S. does not contradict Enerplus's assertion that the emails are privileged.  Nor does S.L.D.S. refute Enerplus's statements that the document Mr. Small referred to in his deposition was not the emails contained in group "E."  There is no indication in the record that S.L.D.S. disagrees with Enerplus's statement that the document referred to by Mr. Small has been produced.  Even so, were we to assume that Mr. Small's testimony was sufficient to raise the issue of waiver as to group "E," Enerplus has carried its burden to refute the waiver argument by establishing the emails were not part of Mr. Small's review and by demonstrating that the document he did use has been produced.  *See Arkla, Inc.*, 846 S.W.2d at 630.  Therefore, the

-10-

emails in group "E" remain protected by the attorney-client privilege, and there is no need to further address the application of Texas Rule of Evidence 612(2). The trial court abused its discretion by ordering disclosure of the group "E" documents.

*The Crime-Fraud Exception: Groups "A," "C," "D," & "E"*

S.L.D.S. asserts that the remainder of the documents, group "D," is discoverable pursuant to the crime-fraud exception of Rule 503. Group "D" contains a due diligence review created on August 31, 2005, by attorneys at Andrews & Kurth, L.L.P., for Enerplus. By affidavit testimony, Enerplus Land Manager Roxanne Forst explained the document was created as part of the merger whereby Enerplus acquired Lyco Energy Corporation. Ms. Forst explains that this type of document is routinely requested by companies and reflects the legal analysis performed by attorneys on behalf of Enerplus at the time of the acquisition. Enerplus asserted the attorney-client privilege protected the memorandum from discovery. S.L.D.S. also contends that to the extent they are privileged, the documents contained in groups "A," "C," and "E" are also discoverable pursuant to the exception.

Texas Rule of Evidence 503(d)(1) provides that material otherwise protected by the attorney-client privilege is discoverable if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud. *See* TEX.R.EVID. 503(d)(1); *In re Seigel*, 198 S.W.3d at 28. The crime fraud exception only applies if: (1) the party asserting the exception establishes a *prima facie* case of contemplated fraud; and (2) there is a relationship between the document for which the privilege is challenged and the *prima facie* proof offered. *In re Seigel*, 198 S.W.3d at 28.

The *prima facie* requirement is met when the proponent offers evidence establishing the elements of fraud and that the fraud was ongoing, or about to be committed at the time the document was prepared. *Id*. Mere allegations of fraud are not sufficient. *Id*. Similarly, the fact that the plaintiff's cause of action involves fraudulent conduct is also insufficient. *Id*. The fraud alleged to have occurred must have happened at or during the time the document was prepared, and the document must have been created as part of perpetrating the fraud. *Id*. at 28-9. The trial court must make findings both that the *prima facie* case has been established and that a nexus exists between the document at issue and the alleged fraud. *Id*. at 29.

S.L.D.S. makes a three-part argument in support of its assertion that the crime-fraud exception applies to all the documents otherwise protected by the attorney-client privilege. Under part one, S.L.D.S. argues that the July 29, 2004 memorandum, which has been produced pursuant to agreement, indicates that Enerplus had developed a "fraudulent scheme to obtain and use releases from various interest owners to convince others to also release their interest in the 1962 Lease." S.L.D.S. also argues that the remainder of the evidence establishes element one of the exception. However, this argument consists only of S.L.D.S.'s own allegations that "Enerplus engaged in two forms of fraud: the misrepresentation to SLDS that the 1962 Lease was invalid for lack of production and its concealment of the fact that the 1962 Lease was valid when and after the misrepresentation was made." As we noted above, neither the mere allegation of fraud, nor the fact that the plaintiff's cause of action includes fraudulent conduct is sufficient to establish the first element of the crime-fraud exception. *See In re Seigel*, 198 S.W.3d at 28. Here, the majority of S.L.D.S.'s "evidence" demonstrating that Enerplus engaged its attorney for fraudulent purposes is its own allegations of fraud, which serve as the basis of its lawsuit. Such a

demonstration will not serve as a basis for the application of the crime-fraud exception.  *See id.*

Were we to determine that the July 29, 2004 memorandum was sufficient to demonstrate Enerplus engaged in fraudulent conduct, which would satisfy the first element of the exception, S.L.D.S. also argues that there is proof that Mr. Lee's services were obtained to further the fraud in the withheld documents.  Without commenting on the contents of the documents in groups "A," "C," and "E," we disagree that S.L.D.S.'s blanket assertion that those documents will prove the purpose of Mr. Lee's services was fraud satisfies the requirements of the exception.  Were we to accept S.L.D.S.'s argument, the exception would overrun the rule.  Parties seeking such discovery would simply argue that withheld documents will prove their case, and the attorney-client privilege would cease to exist in many situations.

Similarly, S.L.D.S. argues that the required nexus between the documents and the fraudulent conduct will be established by the contents of those documents.  S.L.D.S. asserts that the documents it seeks will demonstrate that Enerplus's fraudulent concealment was ongoing.  Again, such an argument cannot serve as the basis for an exception to the attorney-client privilege.  The crime-fraud exception requires the discovering party to establish a connection between the particular documents sought and the fraud alleged.  Mere allegations will not suffice.  As S.L.D.S. has not established a *prima facie* case that the crime-fraud exception applies to the documents protected by the attorney-client privilege, the trial court abused its discretion by ordering Enerplus to produce them.

*Attorney Work Product:  Group "B"*

Group "B" refers to a single document which the parties refer to as a fax from Enerplus Landman Kirby Dasinger to Enerplus Land Manager Greg Ryan.  According to Mr. Ryan's

affidavit, the document was created as part of a series of communications related to his investigation of Mr. Nelan's claim that he was fraudulently induced to sign the 2004 oil and gas release. Enerplus asserted both the attorney-client and attorney work product privileges to protect the document from discovery. We will limit our analysis to whether the document is protected as non-core attorney work product.

Rule 192.5(b)(2) precludes discovery of an attorney's work product. TEX.R.CIV.P. 192.5(b)(2). The work product exemption protects the attorney's mental processes, conclusions, and legal theories from discovery by another party, thereby providing a privileged area where the attorney can analyze and prepare the case. *Marathon Oil Co.*, 893 S.W.2d at 589. The work product exemption extends both to documents actually created by the attorney and memoranda, reports, notes, or summaries of interviews prepared by other individuals for the attorney's use. *Id*.

S.L.D.S. does not contest that the fax is properly categorized by Enerplus as non-core work product. The party seeking such discovery labors under a heavy burden to show both that a "substantial need" for the materials exists and that materials equivalent to those sought cannot be obtained without substantial hardship. *See* TEX.R.CIV.P. 192.5(b)(2); *In re Bexar County Crim. Dist. Attorney's Office*, 224 S.W.3d 182, 188 (Tex. 2007). A party does not establish a "substantial need" for materials by showing a "substantial desire" for them. *Id*. at 188. By the same token, a "substantial need" is not established by evidence that the party could not prove his cause of action without the materials. *In re Bexar County Crim. Dist. Atty's Office*, 224 S.W.3d at 188.

S.L.D.S. argues summarily that "[i]nformation in the May 2006 fax may evidence the

fraudulent scheme concocted and pursued by Enerplus to obtain the release from SLDS of its interest in the 1962 Lease." S.L.D.S. continues by stating, "[t]he communication from Kirby Dasinger may very well confirm the knowledge of Enerplus that SLDS's interest was still valid despite the representation by Joe Small to Fred Nelan; evidence SLDS would have a substantial need for and hardship acquiring from another source . . . ." This statement does nothing more than demonstrate S.L.D.S.'s desire to obtain a copy of the fax and is therefore not sufficient to satisfy its burden. Accordingly, with regard to group "B," the trial court abused its discretion by ordering Enerplus to disclose the fax.

We conclude that the trial court abused its discretion by overruling Relators' objections to discovery and by granting the motion to compel discovery of privileged materials. Because Realtors have no adequate remedy at law, we conditionally grant the relief requested. The writ will issue only if the trial court fails to comply with this opinion.


June 10, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.)(Sitting by Assignment)

-15-