## IN RE FAIRWAY METHANOL LLC and Celanese Ltd., Relators

### NO. 14–16–00884–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed January 31, 2017

---

Steven Dominic Sanfelippo, Dallas, TX, for Relator.

Anthony Glenn Buzbee, Manuel Solis, Houston, TX, for Real Party in Interest.

Panel consists of Justices Christopher, Jamison, and Donovan.

## OPINION

Tracy Christopher, Justice

On November 7, 2016, relators Fairway Methanol LLC and Celanese Ltd. filed a

petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52. In the petition, relators ask this court to compel the Honorable Brent Gamble, presiding judge of the 270th District Court of Harris County, to vacate his Order on Plaintiffs' Motion to Compel signed on October 12, 2016 that requires relators to: (1) remove any and all attorney-client privilege and work-product privilege objections to Plaintiffs' Request for "Any and all incident, accident and/or investigation reports made or filed by you regarding the Occurrence made the basis of this lawsuit, "any and all statements related to this Occurrence" and "all documents related to any interviews conducted by you", and (2) produce documents responsive to this request.

We conclude many of the documents at issue are protected by the attorney-client privilege and the work product privilege and that the trial court therefore abused its discretion by ordering their production. There is no adequate remedy by appeal for this error. We conditionally grant the petition for writ of mandamus as specified in the conclusion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Relator Celanese Ltd. ("Celanese") owns and operates the Clear Lake Facility in Pasadena, Texas. Jose Salazar ("Salazar") was employed by Celanese as an electrician at the Clear Lake Facility. On November 19, 2014, Salazar was injured when he tripped on an angled iron that was protruding from the floor and fell into charged electrical equipment while working at the Clear Lake Facility.

Celanese asserts that because of the circumstances surrounding the accident and the severe nature of Salazar's injuries, it believed that there was a substantial likelihood that Salazar would bring personal injury and workers' compensation claims against Celanese and its related companies. On November 20, 2014, Gary Rowen ("Rowen"), who served as in-house attorney for defendant Celanese Corporation, requested that an investigative team provide the Celanese Law Department with the information needed to assess potential liability in potential litigation and to begin strategizing legal theories and defenses to any claims raised in anticipated legal or regulatory proceedings.

According to Rowen, the primary purpose for the investigation and creation of documents and communications therefrom was to aid Celanese in preparing to defend itself in anticipated litigation. As a secondary concern, the information communicated from the investigative team to the legal department was necessary for the legal department to provide Celanese with business and legal advice with respect to the potential termination of employees involved in the accident.

The team was comprised of Celanese employees, including Gregorio Aguilar, Paresh Bhakta, Linda Blais, Brian Connelly, Duard Franklin, Stuart Hightower, Thomas Mattix, and Doug Wallace. The team was supervised and directed by attorneys in the Celanese legal department with guidance from outside legal counsel. The team members were immediately informed that the investigation was for the purpose of assisting counsel and instructed that all communications and documents generated during their investigation must be kept confidential and marked as "Privileged and Confidential" or "Attorney–Client Privilege–Attorney Work Product."

The investigative team conducted interviews and site inspections and communicated their findings to the Celanese Law Department. This included a root cause analysis which was necessary for the Celanese Law Department to evaluate liability and begin developing a strategy for de-

fending Celanese in likely impending civil and regulatory litigation.

Less than six months after the accident, on April 9, 2015, Salazar and his wife (collectively "Plaintiffs") filed suit, asserting claims against various entities including relator Fairway Methanol, LLC ("Fairway"). Fairway is a separate joint venture producing methanol at the Clear Lake Facility. Plaintiffs did not sue relator Celanese Ltd., but did sue two related entities, Celanese Corporation and Celanese International Corporation.

In May 2015, Plaintiffs served discovery requests on Fairway. Fairway responded and produced over 11,000 pages of documents. Among the category of documents requested from Fairway were "any and all incident accident and/or investigation reports made or filed by you regarding the Occurrence made the basis of this lawsuit," "any and all statements related to this Occurrence," and "all documents related to any interviews conducted by you, related to and following the Occurrence." Fairway objected to the request to the extent it sought attorney-client and work-product privileged documents, but because it did not participate in any investigation of the accident, it responded that it had no responsive documents or information in its possession, custody, or control.

Plaintiffs then served a deposition on written question with subpoena duces tecum on Celanese, with eighty-five separate requests for production. Celanese responded and produced over 42,000 pages of documents. In response to Plaintiffs' request for "any and all incident accident and/or investigation reports made or filed by you regarding the Occurrence made the basis of this lawsuit," "any and all statements related to this Occurrence," and "all documents related to any interviews conducted by you, related to and following the Occurrence", Celanese asserted the attorney-client privilege and work-product privilege and stated that it was withholding documents pursuant to these privileges.

On July 12, 2016, Plaintiffs filed a motion to compel the production of the documents that Celanese had withheld as privileged. Plaintiffs also sought to compel production of these same documents from Fairway.

On September 23, 2016, the trial court held a non-evidentiary hearing on Plaintiffs' motion to compel. At the hearing, the trial court requested Celanese to provide all documents it withheld for in camera inspection and Celanese did so. On October 12, 2016, the trial court signed an order granting the motion to compel and ordering the production of all of the documents:

> Defendant Fairway Methanol, LLC and Celanese Ltd. must remove any and all attorney-client privilege and work-product privilege objections to Plaintiffs' Request for 'Any and all incident, accident and/or investigation reports made or filed by you regarding the Occurrence made the basis of this lawsuit,' 'any and all statements related to this Occurrence' and 'all documents related to any interviews conducted by you' respectively. Defendant Fairway Methanol and/or Celanese Ltd. must produce responsive documents to this Request no later than ten days after the signing of this Order.

In its petition for writ of mandamus, Celanese argues that the responsive documents that it withheld are protected by the attorney-client and work product privileges and that the trial court abused its discretion by ordering their production.

## II. Mandamus Standard

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that

the relator has no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).

■ "Mandamus is proper when the trial court erroneously orders the disclosure of privileged information because the trial court's error cannot be corrected on appeal." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam); *see also In re Living Centers of Texas, Inc.*, 175 S.W.3d 253, 256 (Tex. 2005) (orig. proceeding) ("mandamus is appropriate if we conclude that [documents] are privileged and have been improperly ordered disclosed").

■ A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or properly apply the law to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). "Whether a discovery privilege applies is a matter of statutory construction" and "[s]tatutory construction is a question of law we review de novo." *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 280 (Tex. 2016). The issue of whether a trial court has properly applied the law of privileges to the documents sought to be discovered is reviewed with limited deference. *See Keene Corp. v. Caldwell*, 840 S.W.2d 715, 718 (Tex. App.–Houston [14th Dist.] 1992, no writ).

■ There is no presumption that documents are privileged, and the party seeking to resist discovery bears the burden of proving an applicable privilege. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 223, 225.

### III. ANALYSIS

**A. Celanese made a prima facie showing that the communications are protected by the attorney-client privilege.**

■ The attorney-client privilege protects:

confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer, or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

Tex. R. Civ. Evid. 503(b). The attorney-client privilege protects not only the communications between the lawyer and client, but also communications between their representatives. *Id.*; *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 49–50 (Tex. 2012).

■ A "representative of the client" may be any person "who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client." *See* Tex. R. Evid. 503(a)(2)(B). "The 'subject matter' test deems an employee's communication with the corporation's attorney privileged if two conditions are satisfied. First, that the communication is made at the direction of her superiors in the corporation. Second, where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the employee's duties of her employment."

*In re USA Waste Mgmt. Res., L.L.C.*, 387 S.W.3d 92, 96 (Tex. App.–Houston [14th Dist.] 2012, orig. proceeding).

■ Celanese argues that the withheld documents are protected by the attorney-client privilege based on the following facts stated in the affidavit of Rowen, in-house counsel for Celanese Corporation. On November 20, 2014, Rowen requested that an investigative team provide the Celanese Law Department with the information needed to assess potential liability in potential litigation and to begin strategizing legal theories and defenses to any claims raised in anticipated legal or regulatory proceedings. According to Rowen, the primary purpose for the investigation and creation of documents and communications therefrom was to aid Celanese in preparing to defend itself in anticipated litigation. As a secondary concern, the information communicated from the investigative team to the legal department was necessary for the legal department to provide Celanese with business and legal advice with respect to the potential termination of employees involved in the accident. The team members were immediately informed that the investigation was for the purpose of assisting counsel and that all communications and documents generated during their investigation must be kept confidential and marked as "Privileged and Confidential" or "Attorney–Client Privilege—Attorney Work Product." The investigative team conducted interviews and site inspections and communicated their findings to the Celanese Law Department. They prepared a root cause analysis which was necessary for the Celanese Law Department to evaluate liability and begin developing a strategy for defending itself in likely civil and regulatory litigation. Rowen states, "All of the communications withheld by Celanese were communications between Celanese in-house and outside counsel and their rep-resentatives made for the purposes of providing and communicating legal advice or otherwise facilitating or providing professional legal services."

Celanese argues that because the investigative team worked under the direction of the Celanese Law Department, the communications between the team members are communications between representatives of the lawyer—"one employed by the lawyer to assist the lawyer in the rendition of professional legal services" and are therefore protected. *See* Tex. R. Evid. 503(a)(4)(A), (b)(1)(B), (b)(1)(E). Celanese additionally argues that because the members of the investigative team were employees of Celanese acting within the scope of their employment, they should also be considered a "representative of the client" as defined by Rule 503(a)(2)(B): "any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client." Tex. R. Evid. 503(a)(2)(B). Rule 503(b)(1)(A) and (D) protects communications between the lawyer and representatives of the client and communications between representatives of the client made to facilitate legal services. *See* Tex. R. Evid. 503(b)(1)(A) and (D).

■ Plaintiffs assert that a representative of the client only includes a person who has authority to hire counsel and to act on counsel's advice, and that Celanese has not shown that the members of the investigative team had such authority, citing *National Tank Co. v. Brotherton*, 851 S.W.2d 193, 197–98 (Tex. 1993). However, shortly after *Brotherton* was decided, Rule of Evidence 503(a) was amended to additionally define "a client representative" to also include "any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in

the scope of employment for the client." *See* Tex. R. Evid. 503(a)(2) & cmt; *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 225 n.3. "As such, the attorney-client privilege may apply to communications between attorneys and employees who are not executives or supervisors." *Id.*

Plaintiffs also argue that for the communications at issue to be protected by the attorney-client privilege, they "must be for the primary purpose of soliciting legal, rather than business advice", citing *North Carolina Electric Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 514 (M.D.N.C. 1986) and *Poseidon Oil Pipeline Co. v. Transocean Sedco Forex, Inc.*, No. 00–2154, 2001 WL 1360434, at *4–5 (E.D. La. Oct. 30, 2001) (the primary motivating purpose behind the creation of the document must be to aid in possible future litigation). According to Plaintiffs, the primary purpose of the communications was not to facilitate legal services, but was to prevent future accidents and improve safety policies and procedures.

However, Plaintiffs cite no Texas authority for their position that the communication must have been made for the *primary* purpose of soliciting legal, rather than business advice. And the federal decisions supporting Plaintiffs' position are not binding on our court. More important, the language of Rule 503(b) does not require that the *primary* purpose of the communication be to facilitate the rendition of legal services; it only requires that the communication be made to facilitate the rendition of legal services. *See* Tex. R. Civ. Evid. 503(b).

Finally, Plaintiffs argue that Celanese has not proved that the investigation team was under the supervision of Celanese counsel. Although Rowen's affidavit states "the investigative team was at all times supervised and directed by attorneys in the Celanese legal department," Plaintiffs argue that an email from investigative team member Gregorio Aguilar shows the opposite. The email states: "I led an investigation for an electrical incident where we had a significant injury to an employee … there were many people at high levels in the organizations who had their own opinions on what happened and put pressure on my team …". We see no contradiction between these statements. Aguilar could have led the investigation under the supervision of the Celanese legal department. Moreover, even if the investigation was led by Aguilar, that would not preclude the communications from being made to facilitate legal services.

For these reasons, we conclude that Rowen's affidavit is sufficient to make a prima facie showing that the withheld communications are protected by the attorney-client privilege. *See In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 224–25.

**B. Celanese made a prima facie showing that the withheld documents are protected by the work product privilege.**

▇▇▇ Rule 192.5 provides in relevant part:

(a) *Work Product Defined.* Work product comprises:

(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or

(2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.

(b) *Protection of Work Product.*

(1) Protection of Core Work Product—Attorney Mental Processes. Core work product—the work product of an attorney or an attorney's representative that contains the attorney's or the attorney's representative's mental impressions, opinions, conclusions, or legal theories—is not discoverable.

(2) Protection of Other Work Product. Any other work product is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means.

Tex. R. Civ. P. 192.5. Thus, Rule 192.5 protects all materials developed and all communications made by a party's employees in anticipation of litigation.

 "An investigation is conducted in anticipation of litigation if it meets the two-prong test of *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 40–41 (Tex. 1989)," which includes both an objective prong and a subjective prong. *Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 204 (Tex. 1993).[1] Specifically, an investigation is conducted in anticipation of litigation if (1) "a reasonable person would have concluded from the totality of the circumstances surrounding the investigation that there was a substantial chance that litigation would ensue" (the objective prong); and (2) "the party resisting discovery believed in good faith that there was a substantial chance that litigation would ensue and conducted the investigation for the purpose of preparing for such litigation" (the subjective prong). *Brotherton*, 851

S.W.2d at 204, 207. A "substantial chance of litigation" does not "refer to any particular statistical probability that litigation will occur" but "simply means that litigation is more than merely an abstract possibility or unwarranted fear." *Id.* at 204. The Texas Supreme Court rejected the proposition "that the circumstances surrounding an accident can never by themselves be sufficient to trigger the privilege." *Id.* "If a reasonable person would conclude from the severity of the accident and the other circumstances surrounding it that there was a substantial chance that litigation would ensue, then the objective prong . . . is satisfied." *Id.* "It is not necessary that litigation be threatened or imminent, as long as the prospect of litigation is identifiable because of claims that have already arisen." *Id.* at 205. Nor is it necessary for the plaintiff to have manifested an intent to sue. *Id.* at 204.

 The subjective prong does not require the investigating party to be absolutely convinced that litigation will occur; it requires only a good faith belief that there is a substantial chance that litigation will ensure. *Brotherton*, 851 S.W.2d at 204. The subjective prong also "requires that the investigation actually be conducted for the purpose of preparing for litigation." *Id.* However, the language of Rule 192.5 does not require that the sole or primary purpose of the material or communication be for preparing for litigation. *See* Tex. R. Civ. P. 192.5.

 The work product privilege extends both to documents actually created by the attorney and to memoranda, re-

---

**1.** Although *Brotherton* is a plurality opinion, its test for anticipation of litigation has been cited and relied on by subsequent decisions of the Texas Supreme Court, as well as our court. *See, e.g., Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 20 (Tex. 2014); *Wal-*

*Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 722 (Tex. 2003); *Trevino v. Ortega*, 969 S.W.2d 950, 956 (Tex. 1998); *Pittsburgh Corning Corp. v. Caldwell*, 861 S.W.2d 423, 425 (Tex. App.–Houston [14th Dist.] 1993, no writ).

ports, notes, or summaries prepared by other individuals for the attorney's use. *GAF Corp. v. Caldwell*, 839 S.W.2d 149, 151 (Tex. App.–Houston [14th Dist.] 1992, orig. proceeding); *In re McDaniel*, No. 14–13–00127–CV, 2013 WL 1279454, at *3 (Tex. App.–Houston [14th Dist.] Mar. 28, 2013, orig. proceeding) (per curiam) (mem. op.) (rejecting argument that data created by a third party cannot be considered attorney work product).

Texas appellate courts have found accident investigation reports to be protected work product when it is clear that they were prepared in anticipation of litigation.[2]

■ Celanese argues that the objective prong of the *Flores* test is met. Salazar was injured when he tripped on an angled iron that was protruding from the floor and fell into charged electrical equipment. He came in contact with over 15,000 volts of electricity, was immediately hospitalized, and eventually had his arm and shoulder amputated. It was apparent that Salazar would likely incur damages that would not be covered by workers' compensation. Celanese argues that a reasonable person would conclude from these circumstances that there was a substantial chance that negligence/personal injury litigation against Celanese and its related companies would ensue.

Plaintiffs argue that Celanese cannot satisfy the objective prong of *Flores* because there was no evidence of outward manifestations that would indicate to Celanese that litigation was imminent when it performed the investigation.[3] The decisions cited by Plaintiffs for their position that a manifestation of an intent to sue is required, however, were overruled by or are contrary to the Texas Supreme Court's holdings in *Brotherton*, 851 S.W.2d at 204, 207, that "[i]t is not necessary that litigation be threatened or imminent, as long as the prospect of litigation is identifiable because of claims that have already arisen" and that it is not necessary for the plaintiff to have manifested an intent to sue. In *Brotherton*, the Texas Supreme Court overruled *Flores* to the extent that it required outward manifestations of litigation, stating: "We stated in *Flores* that '[c]onsideration should be given to outward manifestations which indicate litigation is *imminent*.' (emphasis added). Upon further consideration, however, we conclude that the "imminence" requirement impairs the policy goals of the witness statement and party communication privileges." *Id.* at 203. Considering these policies, we conclude that the objective prong of *Flores* is satisfied whenever the circumstances surrounding the investigation would have indicated to a reasonable person that there

---

**2.** *See, e.g., In re Christus Health Se. Texas*, No. 09–06–515 CV, 2007 WL 117727, at *2 (Tex. App.–Beaumont Jan. 18, 2007, no pet.) (per curiam) (mem. op.) (holding that investigative report regarding potential premises liability claim was protected work product); *In re Jourdanton Hosp. Corp.*, No. 04–14–00356–CV, 2014 WL 3745447, at *1 (Tex. App.–San Antonio July 30, 2014, orig. proceeding) (mem. op.) (holding that trial court abused its discretion in ordering production of investigative report prepared by hospital after a slip and fall incident because such report is protected work product); *In re Weeks Marine,*

*Inc.*, 31 S.W.3d 389, 391 (Tex. App.–San Antonio 2000, orig. proceeding) (per curiam).

**3.** As support for their argument, Plaintiffs cite *In re Park Cities Bank*, 409 S.W.3d 859, 867 (Tex. App.–Tyler 2013, no pet.); *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801 (Tex. 1986) (orig. proceeding); *Foster v. Heard*, 757 S.W.2d 464, 465 (Tex. App.–Houston [1st Dist.] 1988, no writ); *Enterprise Products Co. v. Sanderson*, 759 S.W.2d 174, 178–79 (Tex. App.–Beaumont 1988, no writ); and *Phelps Dodge Ref. Corp. v. Marsh*, 733 S.W.2d 359, 361 (Tex. App.–El Paso 1987, orig. proceeding).

was a substantial chance of litigation. *Id.*[4]

Plaintiffs further argue that relator Celanese Ltd. could not have prepared the withheld documents in anticipation of litigation because it was protected from suit in court from its employee, Salazar, by section 408.001 of the Texas Labor Code, which relegated Salazar to a worker's compensation claim. Plaintiffs assert that the term "litigation" refers only to court proceedings, which does not include not include workers' compensation administrative proceedings, citing *Flores*, 777 S.W.2d at 40–41 (interpreting the term "litigation" as used in repealed Rule 166b(3)(d)). Even if *Flores* applies to successor Rule 192.5, Rowen's affidavit states that he was serving as counsel for Celanese Corporation, not relator Celanese Ltd., and that he requested that an investigative team provide the Celanese Law Department with the information needed to assess liability in potential litigation. Because the investigation was requested by counsel employed by Celanese Corporation, the investigation was for the benefit of not just relator Celanese Ltd., but also for Celanese Corporation which could anticipate litigation and who Plaintiffs have, in fact, sued in this court proceeding.

Celanese also offered evidence of the subjective prong of *Flores*—that they had a good faith belief that there was a substantial chance that litigation would ensue and conducted the investigation for the purpose of preparing for such litigation. *See Brotherton*, 851 S.W.2d at 204. Rowen's affidavit states:

Normally the Celanese legal department does not oversee incident investigations; however, given the circumstances and severity of Salazar's injuries, as soon as the Celanese legal department was notified of the accident, we believed that there was a substantial chance that litigation would result from the accident. In particular, based on our prior experience, we believed that there was a substantial chance that Salazar would bring worker's compensation and personal injury claims and/or that Celanese would be brought into adversarial regulatory proceedings with OSHA. . . .

All of the documents withheld by Celanese were prepared by Celanese, its counsel and their representative's in anticipation of litigation arising from and involving the accident. Many of these documents contain Celanese's counsel's mental impressions, opinions, conclusions and legal theories.

We conclude that Rowen's affidavit is sufficient to make a prima facie showing that the withheld documents are protected by the work product privilege. *See In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 224–25.

**C. Plaintiffs have not established that they have substantial need for the non-core work product and that they are unable to obtain the substantial equivalent by other means.**

Plaintiffs argue that even if the root cause analysis report and related documents are work product, they are entitled to these documents under Rule 192.5(b)(2), which provides that non-core work product is discoverable upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain

---

4. The Texas Supreme Court also expressly disapproved of *Stringer* to the extent that it holds that the circumstances surrounding an accident can never by themselves be sufficient to trigger the privilege. *Brotherton,* 851 S.W.2d at 203. The dissenting opinion in *Brotherton* acknowledges that the majority has abandoned the *Stringer, Foster, Sanderson*, and *Phelps* decisions cited by Plaintiffs. *Id.* at 209.

the substantial equivalent of the material by other means. Tex. R. Civ. P. 192.5(b)(2).

We reject Plaintiffs' argument for two reasons. First, we have concluded that all of the non-core work product documents are also protected by the attorney-client privilege provided for by Rule of Evidence 503, which has no substantial need exception. Second, Plaintiffs have not established the requirements of the exception.

 A party seeking to obtain documents through this exception bears a heavy burden to prove its applicability. *In re Bexar Cnty. Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 187–88 (Tex. 2007) (orig. proceeding). Improving a civil litigant's odds of winning is not enough; substantial need is not merely substantial desire. *Id.* at 188. The party seeking discovery of non-core work product labors under a heavy burden to show both that a substantial need for the materials exists and that materials equivalent to those sought cannot be obtained without substantial hardship. *In re Small*, 346 S.W.3d 657, 668 (Tex. App.–El Paso 2009, orig. proceeding); *In re McDaniel*, No. 14–13–00127–CV, 2013 WL 1279454, at *3 (Tex. App.–Houston [14th Dist.] Mar. 28, 2013, orig. proceeding) (mem. op.). Factual information may be obtained by means other than requiring production of privileged documents. *In re ExxonMobil Corp.*, 97 S.W.3d 353, 358 (Tex. App.–Houston [14th Dist.] 2003, orig. proceeding).

However, it is often difficult for a party to show a particularized need for documents because their contents are unknown to it. *See State v. Lowry*, 802 S.W.2d 669, 673 (Tex. 1991). Further, even if a party is able to retrace their opponent's investigative path, the party should not always be put to the expense and delay of that exercise. *See id.*

Plaintiffs point to the severity of Salazar's injuries. But they cite no authority that the severity of an injury is sufficient to establish a substantial need for another party's work product.

Plaintiffs claim that information in the withheld documents is critical to Plaintiffs' case-in-chief. Celanese has produced tens of thousands of pages of documents, including the photographs that were available to the investigative team. Fairway and the other defendants have disclosed all of the individuals that have firsthand knowledge of the accident and other relevant factual matters in this case. Plaintiffs had the opportunity to depose the persons with direct personal knowledge of the events, who were available to the investigative team. Celanese also produced documents showing the subsequent remedial measures that were undertaken as a result of the accident. Plaintiffs have not shown that they are unable, without undue hardship, to obtain the substantial equivalent of Celanese non-core work product by other means. Nor have Plaintiffs explained why the withheld documents are necessary to prove any particular claim or element of a claim which they cannot otherwise establish.

Plaintiffs argue that they should not have to retrace and recreate all of Celanese's investigation efforts. However, it appears that Plaintiffs have already performed their own investigation of the accident through the discovery they have taken in this case.

Plaintiffs claim that the accident scene has been modified. However, Plaintiffs do not claim that they have not been able to discover the modifications or that such modifications have concealed the cause of the accident.

Finally, Plaintiffs argue that the recollections of everyone involved may have weakened over time or may have been enhanced or shaped by interviewing con-

versations with opposing counsel. But that is true in almost every accident case. Here, Plaintiff filed suit against Celanese Corporation less than six months after the accident. So Plaintiffs had the opportunity to seek discovery within a few months of the accident.

We conclude that Plaintiffs have not established that they have substantial need for the non-core work product of Celanese and that they are unable to obtain the substantial equivalent by other means. *See* Tex. R. Civ. P. 192.5(b)(2). Moreover, there is no substantial need exception to the attorney-client privilege that protects many of the communications at issue.

**D. Conclusions Regarding the Individual Documents.**

▇▇▇ When the claim for protection is based on a specific privilege, such as attorney-client or attorney work product, the documents themselves may constitute the only evidence substantiating the claim of privilege. *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). We may conduct our own in camera review to determine if the documents themselves support the privilege and if the trial court properly applied the law of privilege to the documents. *See Barnes v. Whittington*, 751 S.W.2d 493, 495 (Tex. 1988) (orig. proceeding). *See also Southwest Inns, Ltd. v. General Elec. Co.*, 744 S.W.2d 258, 262–63 (Tex. App.–Houston [14th Dist.] 1987, no writ). Accordingly, our court reviewed the withheld documents to determine whether the contents of the document clearly showed that they were either privileged or not privileged under either Rule of Evidence 503 or Rule of Civil Procedure 192.5.

▇▇▇ The attorney-client privilege extends to the entire communication, including facts contained therein. *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996). "Once it is established that a document contains a confidential communication, the privilege extends to the entire document, and not merely the specific portions relating to legal advice, opinions, or mental analysis." *Pittsburgh Corning Corp. v. Caldwell*, 861 S.W.2d 423, 425 (Tex. App.–Houston [14th Dist.] 1993, no writ); *see also In re ExxonMobil Corp.*, 97 S.W.3d 353, 358 (Tex. App.–Houston [14th Dist.] 2003, orig. proceeding).

The withheld documents that relators claim to be privileged consist of 452 pages and are bookmarked according to a document number in the in camera record that has been filed with this court. These documents consist of e-mails and attachments, reports, flow charts, and slide shows, almost all of which clearly relate to either investigating or assessing the causes of the accident or designing and implementing remedial measures.

▇▇▇ Based on our review, we conclude that the following documents are protected by the attorney-client privilege and work product privilege: documents bookmarked as Nos. 1, 2, 3, 5, 8, 9, 14, 16, 17, 23, 27, 28, 28.1, 29, 31, 32, 33, 36, 36.1, 37, 37.1, 38, 40, 40.1, 43, 44, 46, 48, 50, 51, 52, 53, 56, 57, 61., 61.1, 62, 64 Parent, 64, 66, 67, 70, 78, 80, 80.1, 81, 82, 83, 86, 87, 89, 90, 90.1, 91, 93, 95, 98, 99, 100, 102, 106, 106.1, 110, 111, 112, 115, 119, 120, and 121. The content of these documents and communications generally indicates that their purpose was to facilitate legal services and/or prepare for litigation and nothing in their content contradicts Rowen's affidavit that they were created for these purposes. Many are marked "PRIVILEGED AND CONFIDENTIAL," "Attorney Client Privilege," or "Work Product." The trial court clearly abused its discretion by ordering the production of these documents.

▇▇▇ We conclude that the following documents are not protected by either the

attorney-client or work product privilege: Documents bookmarked as Nos. 7, 11, 13, 19, 22, 22.1, 41, 69, 107, 116, and 124. The content of these documents and communications indicate that their purpose was not to facilitate legal services or prepare for litigation, but was for other purposes such as implementing remedial measures or evaluating the performance and discipline of certain employees based on their conduct related to the accident. And some of the documents appear to be related only to plant operations, such as a standard maintenance procedure and a safe work permit. The trial court did not abuse its discretion by ordering the production of these documents.

**E. The trial court abused its discretion by compelling Fairway to produce documents that are not within its possession, custody, or control.**

■■■ A party may not be compelled to produce documents which are not within its "physical possession" under the definition of "possession, custody, or control" set forth in Texas Rule of Civil Procedure 192.7(b); that a party may have access to the documents is insufficient. *See In re Kuntz*, 124 S.W.3d 179, 184 (Tex. 2003) (orig. proceeding). Moreover, the trial court did not need to order Fairway to produce the documents because the court ordered the party with actual physical possession of the documents (Celanese) to produce the very same documents. Plaintiffs do not address these arguments in their response.

## V. CONCLUSION

We conclude that the trial clearly abused its discretion by ordering relators to remove their attorney-client privilege and work-product privilege objections and to produce certain documents that are protected by these privileges. There is no adequate remedy by appeal for this error.

*See Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992). Additionally, the trial court abused its discretion by compelling Fairway to produce documents that are not within its possession, custody, or control. We therefore conditionally grant the petition for writ of mandamus as follows.

We direct the trial court to: (1) to vacate his Order on Plaintiffs' Motion to Compel signed on October 12, 2016, and (2) issue a new Order that only requires Celanese to produce the documents bookmarked as Nos. 7, 11, 13, 19, 22, 22.1, 41, 69, 107, 116, and 124.

We are confident the trial court will act in accordance with this opinion. The writ of mandamus shall issue only if the trial court fails to do so.