**Opinion issued September 19, 2017**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-16-00564-CV

———————————

### IN RE RESCUE CONCEPTS, INC., Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

### O P I N I O N

This case arises from a discovery dispute following a failed land sale.[1] The

trial court ordered relator, Rescue Concepts, Inc. ("Rescue Concepts"), to produce

---

[1] The underlying case is *The HouReal Corporation v. Rescue Concepts, Inc.*, cause number 2014-71749, pending in the 270th District Court of Harris County, Texas, the Hon. Brent Gamble presiding. Rescue Concepts has previously sought mandamus relief to expunge a lis pendens filed by HouReal. This Court conditionally granted a writ of mandamus and directed the trial court to vacate its order denying Rescue Concepts' motion to expunge lis pendens and to order HouReal's notice of lis pendens expunged. *In re Rescue Concepts*, 498 S.W.3d 190 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding).

to real party in interest Jones Lang LaSalle Texas, Inc. ("JLL") communications between Rescue Concepts' representatives and Jacqueline Lucci Smith, a licensed attorney who negotiated the sale on Rescue Concepts' behalf. In its petition for writ of mandamus, Rescue Concepts asserts that the trial court abused its discretion in "ruling that email correspondence between an attorney, Jacqueline Lucci Smith, and her client, Rescue Concepts, Inc., was not privileged and ordering all emails produced without redactions."

JLL, the firm that provided brokerage services to the attempted buyer of the Property, HouReal Corporation ("HouReal"), through JLL's agent James Peacock, argues in part that: (1) the trial court's determination regarding whether the attorney-client privilege applied is entitled to deference because it presented "'conflicting evidence' if not conclusive evidence that no attorney-client relationship existed" between Smith and Rescue Concepts; and (2) the trial court properly exercised its discretion in reviewing the communications in camera and refusing to apply the attorney-client privilege. Because we conclude that, as a matter of law, an attorney-client relationship existed between Smith and Rescue Concepts and the communications in question were confidential communications made to facilitate the rendition of professional legal services, we conditionally grant the writ of mandamus.

## Background

Rescue Concepts provides emergency response training to military personnel and other first responders. It conducts its business, including firearms training, on a parcel of real property in Liberty County (the "Property"). Due to increased development in the area, the Property was no longer ideal for Rescue Concepts' business purposes, and it received unsolicited offers to purchase the Property. Rescue Concepts decided to retain the services of Jacqueline Lucci Smith, an attorney who had previously represented Rescue Concepts in other matters, to help it negotiate a sale of the Property and to provide advice regarding various legal concerns relevant to such a transaction. Smith is not a real estate broker.

Rescue Concepts and Smith executed a letter of engagement "for legal representation related to the negotiation and sale of property owned by Rescue Concepts, Inc." paying Smith a "contingency of 3% of the gross sales price," as an unqualified promise to pay. Under the "Scope of Employment" section, Smith's representation was limited to "the negotiation and sale of the property" as Rescue Concepts' "exclusive and only agent regarding the property." Under the "Withdrawal or Termination" section, Smith's "representation in this matter" is described as "an exclusive listing agreement." The letter also contained boilerplate language: Smith's firm expressed opinions, not guarantees, including "the value of

3

the property"; Smith would determine fees "in accordance with the American Bar Association and the Texas Rules of Professional Conduct"; Smith would notify Rescue Concepts of the "Texas State Bar Grievance Process"; Smith would retain client files; and Smith thanked Rescue Concepts "for the opportunity to provide [it] legal services."

Among other services provided pursuant to this engagement letter, Smith represented Rescue Concepts in its negotiations with HouReal for the purchase of the Property. HouReal was represented by Stephen Peacock, its president and a real estate broker employed by JLL, a real estate brokerage and advice firm.

Eventually, Rescue Concepts and HouReal entered into a contract for the sale of the Property in which HouReal was to buy the Property from Rescue Concepts for $12 million by the closing date of January 7, 2015. The parties used the "Commercial Contract – Unimproved Property" form issued by the Texas Association of Realtors as a contract template, although Smith made some modifications to this form. Under the "Brokers" designation of the form contract, Smith's law firm, Lucci Smith Law, PLLC, was listed as Rescue Concepts' "Principal Broker" and Smith was listed as Rescue Concepts' "Agent." JLL was listed as HouReal's "Cooperating Broker" and Peacock was listed as HouReal's "Agent." Rescue Concepts' vice president and part owner, Melanie Liska, signed

4

the contract for Rescue Concepts. Peacock signed the contract for HouReal.[2]

Attached to the contract was an addendum of eight new provisions, including a confidentiality agreement and permitted exceptions to encumbrances and easements, which Smith drafted.

The sale never closed. HouReal sued Rescue Concepts for breach of contract. Relevant here, Rescue Concepts counterclaimed for breach of contract and fraud, and it sued JLL and Peacock for fraud as well. Rescue Concepts alleged that HouReal breached the contract by failing to tender the balance of the earnest money and that HouReal, Peacock, and JLL knowingly misrepresented HouReal's ability to purchase the Property during the negotiation of the contract.

Smith continued to represent Rescue Concepts as the parties proceeded to mediation and later stages of the litigation. During the discovery period, JLL made two requests for production relevant here. It requested "[a]ll communications between Jacqueline Lucci Smith and [Rescue Concepts] regarding the Property" and "[a]ll communications between Jacqueline Lucci Smith and [Rescue Concepts]

---

[2] The page entitled "Agreement Between Brokers," with a notation that is to be used "only if Paragraph 9B(1) is effective," is blank. Paragraph 9B addresses the payment of fees, and Paragraph 9B(1) provides an option that the "Seller will pay Principal Broker [here, the broker representing the Seller] the fee specified by separate written agreement between Principal Broker and Seller. Principal Broker will pay Cooperating Broker the fee specified in the Agreement Between Brokers found below the parties' signatures to this contract." However, this section was unmarked and, instead, the parties agreed in Paragraph 9B(2) that, at closing, Seller would pay both the "Principal Broker" and "Cooperating Broker" 3% of the sales price.

regarding negotiations with Peacock." JLL asserted that it needed the requested communications to defend against Rescue Concepts' fraud claim because Peacock's representations were communicated to Rescue Concepts only through Smith.

The parties understood these emails to include those sent both during the negotiation period for the sale of the Property—during which Smith sent numerous emails relaying information regarding the negotiations and addressing issues regarding the proposed financial and contractual terms—and after negotiations for the sale of the Property had ceased and litigation for breach of contract and fraud was imminent. During that time, Rescue Concepts and Smith discussed retention of counsel for litigation, injunctive relief, and mediation. Rescue Concepts objected to JLL's requests for production on the basis of attorney-client and work product privilege, and it later served a privilege log detailing the "To," "From," "Subject," and "Received Date" fields along with the privilege asserted for each disputed email. JLL did not challenge Rescue Concepts' assertion of privilege at this time, and discovery continued.

After the close of discovery and less than three weeks before the case's trial setting, JLL moved to compel production of the requested communications between Rescue Concepts and Smith. JLL argued that the requested communications were not privileged because they were made while Smith was

performing services as a real estate broker, not as a lawyer. JLL supported its motion with a copy of the contract between Rescue Concepts and HouReal, which, JLL noted, identified Smith as Rescue Concepts' broker. In a subsequent motion, JLL further claimed that Rescue Concepts had waived the privilege under the offensive-use doctrine by asserting fraud claims based on Peacock's allegedly fraudulent statements. JLL requested that the trial court inspect the withheld communications in camera to determine whether they were privileged.

Rescue Concepts responded by amending its objections and responses, and it re-asserted its attorney-client privilege. Rescue Concepts attached to its response its engagement letter agreement with Smith's law firm; affidavits from Smith and Rescue Concepts' vice president, Melanie Liska; and various emails between and among Smith, Peacock, and third parties, including an email in which Peacock introduced Smith to a third party as Rescue Concepts' attorney.

In her affidavit regarding the nature of the relationship between her and Rescue Concepts, Smith averred that she was hired as Rescue Concepts' attorney both because of her prior representation of the company in other matters and "ongoing legal issues involved in re-platting [the Property], rumors of additional pipelines in the area and other legal issues impacting its Property and business." Smith averred that she negotiated contract terms and advised Rescue Concepts as to the legal ramifications of various contract provisions or conditions during the

7

negotiations. Smith also averred that she identified herself as Rescue Concepts' attorney throughout her negotiations with Peacock, that Peacock had introduced Smith to a third party as Rescue Concepts' attorney, and that Peacock had on at least one occasion sought legal advice from her—advice that she refused to give on the basis of her attorney-client relationship with Rescue Concepts.

Liska averred that Rescue Concepts retained Smith because she had regularly represented Rescue Concepts in other matters and was familiar with both the Property and Rescue Concepts' business generally. Because of Smith's prior representation of Rescue Concepts, Liska stated that Smith's "specialized legal knowledge and skill" allowed her to "analyze negotiations from both a legal and commercial perspective." For those reasons, Liska said in her affidavit that Smith was hired "not as a real estate broker, but as a lawyer."

The trial court held a hearing on the motion to compel and determined that Smith was "wearing more than one hat" or rendering "hybrid" representation by providing both legal and non-legal services. The trial court opined that only those communications "between the lawyer and the client for the purpose of rendering legal services" were protected by attorney-client privilege. Therefore, the trial court ordered Rescue Concepts to produce the communications for an in camera inspection: "The only way I know how to sort that out is for me to look at them. I don't know any other way to do that. So that's what I'm going to order. Produce

8

them in camera." Additionally, Smith offered and delivered to JLL some redacted emails responsive to its request.

After inspecting the communications in camera, the trial court found that none of the communications were privileged and ordered that they be produced. Rescue Concepts moved for reconsideration and for leave to provide additional evidence in support of the privilege assertion. This evidence included a survey of the Property, the Certificate of Formation of Lucci Smith Law, PLLC, excerpts from the Texas Board of Legal Specialization Standard for Attorney Certification in the area of real estate law,[3] and a second affidavit from Smith describing the legal tasks she undertook on behalf of Rescue Concepts. The trial court granted both the motion for reconsideration and the motion to supplement evidence.

At the hearing on the motion for reconsideration, Smith detailed legal tasks she performed during her representation and related her fear that, during her impending deposition, she could not assert privilege on oral communications with

---

[3]     Real Estate Law is defined by the Texas Board of Legal Specialization as:

> **Real Estate Law.** Real estate law is the rendering of advice and services concerning the laws applicable to land and the improvements and appurtenances (including air and subsurface estates) to land. It also includes the acquisition, transfer, development, financing and use of land; and includes without limitation, knowledge of the legal restrictions and constraints imposed privately and by local, state and federal governments upon land and the improvements to land.

Texas Board of Legal Specialization, *Standards for Attorney Specialization Specific Area Requirements for Real Estate Law* (revised Feb. 20, 2009), http://content.tbls.org/pdf/attstdre.pdf (last visited Sept. 5, 2017).

9

Rescue Concepts. Smith asserted that, as additional legal tasks, she prepared a 1031 IRS exchange document, was clearing the Property of invalid liens, as required by the contract, and was replatting the Property to expand the pipeline corridor at HouReal's request. Smith suggested the disputed emails related to this work. And, Smith asserted, the post-negotiation communications included Smith's preparations for mediation, which were also legal services.

The trial court responded to Smith's concerns by indicating that only the reviewed documents were not protected by privilege: "The only thing I've done and the only thing it was my intention to do was to determine that as to the documents that were produced in camera, in my view, are not protected by privilege." While the trial court did not vacate its prior privilege ruling, the trial court stayed the effect of the ruling so that Rescue Concepts could file a petition for writ of mandamus. Rescue Concepts timely filed this petition seeking to vacate the order compelling the production of disputed emails between Smith and Rescue Concepts concerning the real estate transaction.

**Standard of Review**

Mandamus is an extraordinary remedy, available only when the relator can show both that: (1) the trial court clearly abused its discretion or violated a duty imposed by law; and (2) there is no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court commits a clear

abuse of discretion when its ruling is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam) (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996)). A trial court also abuses its discretion if it "clearly fails to analyze the law correctly or properly apply the law to the facts." *In re Fairway Methanol LLC*, 515 S.W.3d 480, 487 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) (citing *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam)).

"'Whether a discovery privilege applies is a matter of statutory construction' and '[s]tatutory construction is a question of law we review de novo.'" *Id.* (quoting *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 280 (Tex. 2016)). "The issue of whether a trial court has properly applied the law of privileges to the documents sought to be discovered is reviewed with limited deference." *Id.*

When a trial court compels production of irrelevant information or information that is relevant but privileged, mandamus relief is appropriate. *In re Nat'l Lloyds Ins. Co.*, —S.W.3d—, 2017 WL 2501107, at *4 (Tex. Jun. 9, 2017); *see also Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (holding that there is no adequate remedy on appeal when trial court erroneously orders disclosure of privileged information because error cannot be corrected once benefit of privilege

is lost).  "[E]ither condition suffices to warrant mandamus relief. . . ." *In re Nat'l Lloyds Ins. Co.*, 2017 WL 2501107, at *4.

To properly assert a claim of privilege, a party must plead the particular privilege, produce evidence to support the privilege through affidavits or testimony, and produce the documents for an in camera inspection, if the trial court determines review is necessary.  *See* TEX. R. CIV. P. 193.3; *In re Baytown Nissan, Inc.*, 451 S.W.3d 140, 145 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *In re ExxonMobil Corp.*, 97 S.W.3d 353, 357 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).  The burden to make a prima facie showing of the privilege is on the party seeking to shield information from discovery, and the party has the obligation to prove, by competent evidence, that the privilege applies to the information sought.  *In re Baytown Nissan*, 451 S.W.3d at 145; *In re ExxonMobil Corp.*, 97 S.W.3d at 357; *see* TEX. R. CIV. P. 193.4(a).

### Existence of Attorney-Client Relationship between Smith and Rescue Concepts

In its sole issue raised in its petition for writ of mandamus, Rescue Concepts asserts that the trial court abused its discretion in ruling that email correspondence between it and Smith was not privileged and ordering all emails produced without redactions.

Texas Rule of Evidence 503 provides that a client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential

12

communications made for the purpose of facilitating the rendition of professional legal services to the client. TEX. R. EVID. 503(b)(1); *In re Nat'l Lloyds Ins. Co.*, 2017 WL 2501107, at \*4 ("The attorney-client privilege protects communications between attorney and client that are (1) not intended to be disclosed to third parties and (2) made for the purpose of facilitating the rendition of professional legal services."). Thus, the applicability of the attorney-client privilege necessarily relies upon the existence of an attorney-client relationship. *See* TEX. R. EVID. 503(b)(1); *In re Nat'l Lloyds Ins. Co.*, 2017 WL 2501107, at \*4; *In re Baytown Nissan*, 451 S.W.3d at 145–46.

The attorney-client relationship is contractual. *In re Baytown Nissan*, 451 S.W.3d at 145–46; *LeBlanc v. Lange*, 365 S.W.3d 70, 79 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.)). An attorney must agree to render professional services for a client. *LeBlanc*, 365 S.W.3d at 79. In order to establish the relationship, the parties must either explicitly or by their conduct manifest an intent to create it. *Id.* To make the determination of whether there was an agreement or meeting of the minds to form such a relationship, courts must use objective standards regarding what the parties said and did. *Id.* (citing *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 254 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). One party's subjective

belief that such a relationship was formed is not sufficient. *Id.* (citing *see Tanox*, 105 S.W.3d at 254, and *Span Enters. v. Wood*, 274 S.W.3d 854, 858 (Tex. App.— Houston [1st Dist.] 2008, no pet.)).

Rescue Concepts, as the party asserting a privilege in opposition to a discovery request, was required to establish "by testimony or affidavit a prima facie case for the privilege," but it was required to "produce 'only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *See In re Nat'l Lloyds Ins. Co.*, 2017 WL 25001107, at *5 (quoting *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 698 (Tex. 2015) (orig. proceeding), and *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding)).

Here, Rescue Concepts presented evidence of the existence of an attorney-client relationship between itself and Smith. Specifically, it presented its letter of engagement in which it retained Smith "for legal representation related to the negotiation and sale" of the Property in exchange for a "contingency [fee] of 3% of the gross sales price." Under the "Scope of Employment" section, Smith's representation was limited to "the negotiation and sale of the property" as Rescue Concepts' "exclusive and only agent regarding the property." The letter of engagement also included language indicating the Smith's fees were determined "in accordance with the American Bar Association and the Texas Rules of

14

Professional Conduct"; notifying Rescue Concepts of the "Texas State Bar Grievance Process"; and thanking Rescue Concepts "for the opportunity to provide [it] legal services."

Rescue Concepts also presented the affidavits of both Smith and Liska. Liska averred that Rescue Concepts had retained Smith to perform legal services on other occasions and that it retained her because of her legal expertise and prior knowledge of Rescue Concepts' business needs. Liska stated that Rescue Concepts had relied on Smith throughout its attempts to sell the Property, not as a real estate broker, but as a lawyer. Liska further stated that if Rescue Concepts had wanted a real estate broker and not a lawyer to handle the sale of the Property, Rescue Concepts would not have hired Smith.

Smith averred that she was a licensed attorney, but she was not licensed as a real estate broker or agent. Rescue Concepts retained her in her capacity as an attorney to negotiate on its behalf and to advise it of the legal ramifications involved in transferring and developing the Property. Specifically, Smith averred that she had previously provided legal services to Rescue Concepts "in relation to pipeline condemnation matters, to re-plat the Property for a pipeline corridor, and to negotiate the lease of an aerial easement for a security monitoring camera, to name a few." Smith further stated that:

> While in the process of re-platting the Property, [Rescue Concepts] began receiving unsolicited offers to purchase the 300-acre tract. Due

15

to ongoing legal issues involved in re-platting, rumors of additional pipelines in the area and other legal issues impacting its Property and business, [Rescue Concepts] requested [that Smith's firm] represent it in all matters relating to the sale of the Property. [Rescue Concepts] received calls from brokers offering to list the property, but [Rescue Concepts] chose to retain [Smith's firm] as its lawyer because of my knowledge of the business and property, to assist in legal issues relating to the sale and act as counselor for [Rescue Concepts] in connection with the sale. I prepared an engagement letter which complied with the Texas Disciplinary Rules of Professional Conduct and understood that I was retained to provide legal services in relation to the sale of the Property. I did not agree to act as a broker.

As part of her representation of Rescue Concepts, Smith averred that she "negotiated the terms of a contract for sale of the property"; that she "regularly communicated with [her] client regarding the legal implications of the ongoing negotiations"; and that she provided "legal analysis of certain provisions or conditions being negotiated."

In addition to both Smith's and Liska's affidavits setting out their intent to have formed an attorney-client relationship, Rescue Concepts presented evidence in the form of emails, including one sent by Peacock, in which Smith was referred to as Rescue Concepts' attorney.

Thus, looking objectively at what the parties said and did, Rescue Concepts presented evidence that Smith agreed to render professional legal services to it. *See LeBlanc*, 365 S.W.3d at 79. Both the explicit statements of the parties and their conduct manifested an intent to create a contractual attorney-client relationship. *See id.*

16

JLL argues that it produced at least "'conflicting evidence' if not conclusive evidence that no attorney-client relationship existed" between Smith and Rescue Concepts, and thus, "the decision of the trial court as to whether the privilege applied 'must be deemed conclusive.'" *See Boring & Tunneling Co. of Am., Inc. v. Salazar*, 782 S.W.2d 284, 289 (Tex. App.—Houston [1st Dist.] 1989, orig. proceeding) (determining that record supported trial court's determination that attorney representing company in wrongful death suit did not have attorney-client relationship with company's employee). JLL argues that Smith's emails regarding the negotiation and the sale of the Property did not constitute "the rendition of professional legal services when no actual legal advice is given."

Contrary to its assertion, JLL has failed to identify any evidence controverting the existence of an attorney-client relationship between Smith and Rescue Concepts. It has presented no evidence that Smith acted only as a real estate broker. It presented no evidence rebutting the statements of both Smith and Rescue Concepts' representatives that they had formed an attorney client relationship.[4] Rather, JLL points to statements within Smith's engagement letter

---

[4] JLL challenges Smith's and Liska's affidavits, asserting that they are conclusory and improperly assert "global allegations" that do not sufficiently describe or identify the disputed documents. However, an affidavit is only conclusory if it provides no factual basis for the privilege asserted. *In re BP Products N. Am. Inc.*, 263 S.W.3d 106, 113 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex. 2004) (orig. proceeding)). Here, Smith's and Liska's affidavits did provide specific facts

indicating that the "scope of employment" included the "negotiation" of a sale in exchange for a fee of 3% of the gross sales price, arguing that brokers may negotiate the sale of property. JLL also points to language in the engagement contract indicating Smith was hired as "an exclusive listing agent for the subject real property," not as an attorney. For example, the engagement contract stated that Smith's firm was the "exclusive and only agent regarding the property" and that the firm's "representation in this matter is an exclusive listing agreement." Finally, JLL points to the fact that the sale contract between HouReal and Rescue Concepts listed Smith as Rescue Concepts' "broker" under the section addressing the payment of fees pursuant to the sale of the Property.

These arguments by JLL ignore the nature of the services that Smith provided to Rescue Concepts. Specifically, they ignore the distinction between an attorney—who is authorized as a licensed attorney to perform virtually all of the services a broker can perform—and a real estate broker—who may not perform any of the services that require a licensed attorney. As demonstrated by the

regarding Rescue Concepts' retention of Smith to provide legal services. Rescue Concepts supported the statements in the affidavits by providing the engagement letter and a privilege log. *See In re E.I. DuPont*, 136 S.W.3d at 223–24 (considering privilege log describing documents withheld as supplement to affidavit generally describing documents and holding that "an affidavit, even if it addresses groups of documents rather than each document individually" may be sufficient to make prima facie privilege showing). Furthermore, Rescue Concepts provided the disputed communications to the trial court to conduct an in camera review. *See In re BP Prods.*, 263 S.W.3d at 115 (explaining that when "the specific details of each document are restricted . . . the documents themselves constitute the only sufficient evidence of the claim of privilege").

affidavits and the documents themselves, Smith provided advice regarding contract terms and matters related to litigation that fall within the scope of professional duties of attorneys but outside the scope of work that brokers are authorized to perform. As JLL argues, attorney-client privilege does not apply to communications between a client and an attorney if an attorney is employed in a non-legal capacity. *Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 332 (Tex. App.—Austin 2000, pet. denied). If a client "hires an attorney to draft an instrument but does not seek the attorney's advice with respect to that instrument" or otherwise ask for or receive legal advice, the attorney is "considered a 'mere scrivener'" and is providing non-legal broker services. *See In re Bivins*, 162 S.W.3d 415, 419–20 (Tex. App.—Waco 2005, orig. proceeding) (holding that attorney-client relationship is not created when attorney is hired in non-legal capacity) (citing, e.g., *Pondrum v. Gray*, 298 S.W. 409, 412 (Tex. Comm'n App. 1927, holding approved)). However, the attorney-client privilege clearly does apply to work an attorney undertakes on a client's behalf that is within the scope of work licensed attorneys are authorized to provide.

The authorized activities of a real estate broker are those set out in the Real Estate License Act, Chapter 1101 of the Texas Occupations Code. *See* TEX. OCC. CODE ANN. §§ 1101.001–.806 (West 2012 & Supp. 2016). Among other acts, a real estate broker sells, offers to sell, lists, or negotiates a sale of real estate;

procures or assists in procuring a prospect; and provides an analysis, opinion, or conclusion of the price of real estate so long as the opinion is not referred to as an appraisal. *See id.* § 1101.002(1)(A) (West Supp. 2016). A person acts as a real estate broker under Chapter 1101 "if the person, with the expectation of receiving valuable consideration, directly or indirectly performs or offers, attempts, or agrees to perform for another person any act described by Section 1101.002(1), as a part of a transaction or as an entire transaction." *Id.* § 1101.004 (West Supp. 2016). Chapter 1101, however, does not apply to "an attorney licensed in this state." *See id.* § 1101.005(1) (West Supp. 2016). An attorney licensed in this state may act as a broker without obtaining a separate real estate license. *See id.*; *Banowsky v. Schultz*, No. 05-14-01624-CV, 2016 WL 531573, at *6–7 & n.2 (Tex. App.—Dallas Feb. 10, 2016, no pet.) (mem. op.) (recognizing that Texas-licensed attorney can do everything broker can do except sponsor sales agents, share compensation with agent, or act as designated broker for business entity licensed by Texas Real Estate Commission) (citing TEX. ADMIN. CODE § 535.31).

While an attorney is authorized to act as a broker without obtaining a separate real estate license, a real estate broker cannot provide attorney services to his clients, such as providing legal advice requiring the use of legal skill or knowledge; advising a person regarding the validity or legal sufficiency of an instrument of the validity of title to real property; or drafting documents from a

20

non-approved form. *See* TEX. GOV'T CODE ANN. § 81.101(a) (West 2013) (defining "practice of law"); TEX. OCC. CODE ANN. § 1101.654(a) (West 2012) (providing that commission shall suspend or revoke license of broker who is not licensed as attorney in this State and who engages in unauthorized practice of law by "draft[ing] an instrument, other than a form described by Section 1101.155,[5] that transfers or otherwise affects an interest in real property" or "advis[ing] a person regarding the validity or legal sufficiency of an instrument"); *Unauthorized Practice of Law Comm. v. Am. Home Assur. Co.*, 261 S.W.3d 24, 36–38 (Tex. 2008) (preparing title opinions constitutes practice of law). Here, Smith's license as an attorney allowed her to perform all of the services she was hired to perform for Rescue Concepts; and the Real Estate License Act did not apply to those services. *See* TEX. OCC. CODE ANN. § 1101.005(1); *Banowsky*, 2016 WL 531573, at *6–7 & n.2.

The services provided to Rescue Concepts by Smith in this case were clearly those of an attorney acting in part as an attorney/broker, but going far beyond that. By its plain language, Rescue Concepts' engagement letter addressed "legal

---

[5] Occupations Code section 1101.155 sets out the rules relating to contract forms that may be used by licensed real estate brokers and provides, in relevant part, that the commission may require license holders to use contract forms prepared by the Texas Real Estate Broker-Lawyer Committee and adopted by the commission, and that brokers may also use forms "prepared by the property owner" or "prepared by an attorney and required by the property owner." TEX. OCC. CODE ANN. § 1101.155 (West 2012).

representation related to the negotiation and sale of property owned by Rescue Concepts, Inc." *See Sherman v. Bruton*, 497 S.W.2d 316, 320 (Tex. Civ. App.—Dallas 1973, no writ) (holding, in determining whether attorney who acted as broker could collect commission or legal fees for his services, that "the capacity in which he acted is determined by his contract of employment"). The engagement letter set out the scope of Smith's employment as providing legal representation regarding the negotiation and sale of Rescue Concepts' Property, and it contained multiple references to Smith's duties as an attorney. Construing the plain language of the engagement contract as a whole, as we must, we conclude that it clearly evinces an intent to form an attorney-client relationship between Smith and Rescue Concepts related to the negotiation and sale of the Property. *See Plains Explor. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015) (holding that in construing contracts, we must ascertain parties' true intentions as expressed in language they chose, and we must consider entire writing, harmonizing and giving effect to all contract provisions, bearing in mind particular business activity sought to be served).

The services Smith performed that a broker could also have performed were authorized by the exclusion for attorneys from the strictures in the Real Estate License Act. *See* TEX. OCC. CODE ANN. § 1101.05(1); *Banowsky*, 2016 WL 531573, at *6–7 & n.2. In addition, Smith engaged in numerous activities that a

22

broker could not have performed, such as providing legal advice to her client regarding contract terms, advising Rescue Concepts regarding re-platting the property, pipeline right-of-way issues, and tax implications, and negotiating for and drafting special contract provisions to effectuate the sale of the Property. A non-attorney broker is expressly barred by the Real Estate License Act from performing such services. *See* TEX. OCC. CODE ANN. § 1101.654(a) (providing that commission shall suspend or revoke license of broker who is not licensed as attorney in this State and who engages in unauthorized practice of law by "draft[ing] an instrument, other than a form described by Section 1101.155, that transfers or otherwise affects an interest in real property" or "advis[ing] a person regarding the validity or legal sufficiency of an instrument"); *see also id.* § 1101.002(1)(A) (providing activities that may be performed by licensed real estate broker).

The subsequent representations and actions of both Smith and Rescue Concepts' representatives further demonstrate the existence of an attorney-client relationship between Smith and Rescue Concepts. Both Smith and Liska averred that Smith was retained in her capacity as an attorney, not as a broker, and that Smith provided professional legal services to Rescue Concepts relating to the negotiation and sale of the Property, as discussed above. Smith and Rescue Concepts consistently represented that Smith was acting as Rescue Concepts'

23

attorney and other parties, including Peacock—a broker working for JLL and a principal of HouReal, the potential buyer—understood that Smith was acting as Rescue Concepts' attorney. The fact that the sale agreement listed Smith as Rescue Concepts' "broker" for purposes of collecting the fee provided for by their engagement letter does not change the general nature of the relationship between Smith and Rescue Concepts. Nor does it undermine Smith's role as an attorney authorized to provide services in negotiating the sale of the Property. *See id.* § 1101.005(1) (providing that attorney licensed in this state is not subject to licensing restrictions in the Real Estate License Act); *Banowsky*, 2016 WL 531573, at *6–7 & n.2 (recognizing that Texas licensed attorney can do everything broker can do except sponsor sales agents, share compensation with agent, or act as designated broker for business entity licensed by Texas Real Estate Commission).

The fact that a broker could have engaged in some of the activities Smith undertook on Rescue Concepts' behalf—such as negotiating for the sale of Rescue Concepts' Property and passing information between Rescue Concepts and potential buyers—is irrelevant here. Those activities were performed by Smith, who is not a broker but who had been retained in her capacity as an attorney and who represented herself as an attorney acting on Rescue Concepts' behalf throughout the entire negotiation process. *See, e.g.*, *In re ExxonMobil Corp.*, 97 S.W.3d at 364 ("The review and recommendation of changes to contracts

24

constitutes rendition of legal services."); *see also Harlandale Indep. Sch. Dist.*, 25 S.W.3d at 334–35 (holding, in suit seeking information pursuant to Texas Public Information Act, that entire report created by attorney who was retained "to conduct an investigation in her capacity as an attorney" fell under statutory exception to disclosure for documents that are confidential under law, including Rule of Evidence 503); *In re City of Dallas*, No. 05-03-00516-CV, 2003 WL 21000387, at *2 (Tex. App.—Dallas May 5, 2003, no pet.) (mem. op.) (holding that attorney-client privilege applied to communications between attorney, who also acted "as a negotiator," and his client; rejecting argument that privilege never attached because attorney acted "only as a negotiator" and stating that "while [the attorney] may well have acted as a negotiator . . . , he also acted as a lawyer" and that "[w]hen a lawyer acts in dual roles, the attorney-client privilege attaches").

Looking to the nature of the relationship between Smith and Rescue Concepts as set out in their engagement contract, the parties' explicit statements, and objective standards of what the parties said and did, we conclude that the evidence establishes, as a matter of law, that an attorney-client relationship existed between Smith and Rescue Concepts. *See LeBlanc*, 365 S.W.3d at 79.

**Purpose of Communications between Smith and Rescue Concepts**

For the attorney-client privilege to attach to communications between Smith and Rescue Concepts, Rescue Concepts also had to establish that communications

25

between it and Smith were (1) not intended to be disclosed to third parties and (2) made for the purpose of facilitating the rendition of professional legal services. *See* TEX. R. EVID. 503(b); *In re Nat'l Lloyds Ins. Co.*, 2017 WL 2501107, at \*4. Neither party contends that the communications in question here were intended to be disclosed to third parties. Thus, we must now consider whether the trial court properly evaluated whether the communications were made for the purpose of facilitating the rendition of professional legal services.

Rescue Concepts' claim for protection from discovery is based specifically on the attorney-client privilege, asserting that the controverted emails were communications made for the purpose of facilitating Smith's rendition of professional legal services to it. Thus, the emails themselves constitute significant evidence substantiating Rescue Concepts' claim of privilege. *See In re Fairway Methanol*, 515 S.W.3d at 494. In such circumstances, "[w]e may conduct our own in camera review to determine if the documents themselves support the privilege and if the trial court properly applied the law of privilege to the documents." *Id.* (citing *Barnes v. Whittington*, 751 S.W.2d 493, 495 (Tex. 1988) (orig. proceeding)).

In our review, we are mindful that "[t]he subject of the information communicated between the attorney and client is of no concern in determining whether the privilege is applicable to the documents." *In re GAF Corp. v.*

26

*Caldwell*, 839 S.W.2d 149, 151 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding); *see also In re Fairway Methanol*, 515 S.W.3d at 489 (rejecting plaintiff's claim that communication must be made for primary purpose of soliciting legal, rather than business, advice to be privileged and stating that "the language of Rule 503(b) does not require that the *primary* purpose of the communication be to facilitate the rendition of legal services; it only requires that the communication be made to facilitate the rendition of legal services"). Rather, we must determine whether the documents constituted a communication between an attorney and client under Rule 503(b), i.e. whether they were communications that were (1) not intended to be disclosed to third parties and (2) made for the purpose of facilitating the rendition of professional legal services. *See In re Fairway Methanol*, 515 S.W.3d at 487; *In re GAF Corp.*, 839 S.W.2d at 151; *see also In re Nat'l Lloyds Ins. Co.*, 2017 WL 2501107, at \*4 (discussing requirements of Rule 503(b)). If we determine that a document contains a confidential communication, the attorney-client privilege extends to the entire document, and not merely to the specific portions relating to legal advice, opinions, or mental analysis. *Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex. 1996); *In re Fairway Methanol*, 515 S.W.3d at 494.

The disputed emails in this case are all communications between Smith and representatives of Rescue Concepts regarding the sale of the Property. The

documents that the trial court reviewed in camera and determined were not privileged included messages to Smith from third parties that Smith then forwarded to representatives of Rescue Concepts with minimal commentary. These documents were labeled as RESCUE CONCEPTS INC. (PRIV. FORWARD)-000001-112. The record indicates that Rescue Concepts produced these documents to JLL with Smith's comments redacted. To the extent that the trial court's order requires Rescue Concepts to provide unredacted copies of these emails disclosing Smith's comments to her client, the order violates Rescue Concept's attorney-client privilege. Smith's comments were made directly to her client, were not intended to be disclosed to third parties, and were made for the purpose of facilitating her rendition of professional legal services to Rescue Concepts. *See* TEX. R. EVID. 503(b)(1); *In re Nat'l Lloyds Ins. Co.*, 2017 WL 2501107, at *4.

The contested documents ordered to be produced by the trial court also include privileged communications that refer to other potential buyers of the Property, referred to as RESCUE CONCEPTS INC. (PRIV. REDACTED BUYERS)-000001-10, and privileged documents that contain other sensitive information for which Rescue Concepts proposed additional redaction, referred to as RESCUE CONCEPTS INC. (PRIV. REDACT OTHER)-000001-11. Finally the documents reviewed in camera and ordered produced by the trial court include communications between Smith and Rescue Concepts that Rescue Concepts asserts

fall under the attorney-client relationship in their entirety. These documents are referred to as RESCUE CONCEPTS INC. (PRIV. IN CAMERA)-000001-133.

These various communications took place during ongoing negotiations between Rescue Concepts and HouReal, which was represented by Peacock. In them, Smith discussed and forwarded contract terms and figures, while signing emails with her firm's signature block. Smith sent other emails concerning Rescue Concepts' options in adding specific provisions to its contract with HouReal. After negotiations had broken down and litigation was imminent, representatives of Rescue Concepts and Smith discussed retention of counsel for litigation, injunctive relief, and mediation. Thus, following our own in camera review, we conclude that the disputed emails were communications that were intended to be confidential and that were made between an attorney and her client for the purposes of providing professional legal services related the negotiation and sale of the Property. *See* TEX. R. EVID. 503(b)(1); *In re Nat'l Lloyds Ins. Co.*, 2017 WL 2501107, at \*4. As such, they are protected by attorney-client confidentiality, and the trial court erred in requiring Rescue Concepts to produce those communications to JLL.[6] *See In re*

---

[6] Because the trial court ruled that the attorney-client privilege did not apply here, it did not address JLL's argument that the attorney-client privilege was waived by offensive use. Accordingly, we do not address this argument. Furthermore, because we rule in Rescue Concepts' favor on the issue of attorney-client privilege, we need not address its arguments concerning the timeliness of JLL's motion to compel production of the contested emails.

*Nat'l Lloyds Ins. Co.*, 2017 WL 2501107, at \*4; *In re Fairway Methanol*, 515 S.W.3d at 487.

### Conclusion

We conditionally grant Rescue Concepts' mandamus petition and direct the trial court to vacate its June 30, 2016 order compelling Rescue Concepts to produce the documents the trial court reviewed in camera.  We are confident that the trial court will promptly comply, and our writ will issue only if it does not comply within thirty days of the date of this opinion.


Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Bland.